UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TAMARA IDELE WOLLANDER,<br><br>     Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security<br>Administration,<br><br>     Defendant. | No.  2:15-cv-00130-SAB<br><br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT AND<br>DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT** |

Before the Court are Plaintiff Tamara Idele Wollander's Motion for Summary Judgment, ECF No. 16, and Defendant Commissioner of the Social Security Administration's Motion for Summary Judgment, ECF No. 21. The motions were heard without oral argument. Plaintiff is represented by Dana C. Madsen, and Defendant is represented by Assistant United States Attorney Pamela DeRusha and Special Assistant United States Attorney Summer Stinson. For the reasons set forth below, the Court **grants** Defendant's motion, **denies** Plaintiff's motion, and **affirms** the ruling of the administrative law judge ("ALJ").

### *Jurisdiction*

On August 30, 2011, Plaintiff filed an application for disability insurance benefits. Plaintiff alleges an onset date of January 2, 2007, for various injuries and maladies discussed in detail below.

Plaintiff's application was denied initially and on reconsideration. On

August 6, 2013, Plaintiff appeared and testified at a hearing held in Yakima, Washington, before an ALJ. The ALJ issued an unfavorable decision on September 10, 2013. Plaintiff timely requested review by the Appeals Council, which denied the request on March 17, 2015. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on May 14, 2015. The matter is before this Court under 42 U.S.C. § 405(g).

### *Sequential Evaluation Process*

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if their impairments are of such severity that the claimant is not only unable to do previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 404.1520(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. § 404.1574; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 404.1508-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. § 404.1520(f). If the claimant is able to perform her previous work, the claimant is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of age, education, and work experience? 20 C.F.R. § 404.1520(g).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can

perform other substantial gainful activity. *Id.*

## Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## Statement of Facts

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs to this Court; only the most relevant facts are summarized here. Plaintiff is fifty-five years old, and possesses one year of college education

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY . . . ^ 4

and some vocational training. She worked for twelve years as an ice skater. After a head injury in 2002, Plaintiff alleges she has suffered vertigo, dizziness, and nausea, and that these symptoms appear daily, all day. Plaintiff also alleges that no medication has been successful in eliminating these symptoms, though inner ear medication has provided some relief. Plaintiff also suffers from headaches, fatigue, and neck spasms. Plaintiff attempted to work as a waitress, but was too sick to work consistently. She alleges she requires twelve to fifteen hours rest after two hours of work.

Dr. William Greene diagnosed Plaintiff with adjustment disorder and borderline personality disorder after a psychological evaluation on September 24, 2004. He assigned a GAF score of 55 and determined that Plaintiff possessed moderate limitations in her abilities to interact with colleagues, to interact with the public, to respond to pressures in a normal work setting, and to maintain appropriate behavior in a work setting.

During treatment in 2007, a clinic noted that Plaintiff bore low level depression, general anxiety, chronic neck pain, and menopause, while prescribing an antidepressant. Plaintiff underwent further treatment for her neck pain from 2008 to 2011. A neurologist, John Wurst, M.D., evaluated Plaintiff on September 10, 2009. Dr. Wurst noted Plaintiff suffered from mood swings, panic attacks, head and neck pain, nausea, and vomiting.

In January, 2010, Debra Brown, Ph.D., diagnosed Plaintiff with personality disorder and found mild limitations for work. Plaintiff complained of depression and suicide attempts from mid-2010 to late 2011. She was treated for a concussion on November 5, 2011. From 2012 to 2013 Plaintiff complained of fatigue, depression, knee pain, headaches, and vertigo. A February, 2013 x-ray showed grade 1 anterolisthesis, moderate spondylitis, dextroscoliosis, and bony foraminal narrowing secondary to uncovertebral, and facet degenerative joint disease in various locations in Plaintiff's spine.

John Arnold, Ph.D., evaluated Plaintiff on April 4, 2013. He found a pain disorder, and major depressive and anxiety, assigning GAF Score of 55. He also found marked limitations in Plaintiff's ability to work within a schedule and complete a normal work week without interruptions. He found eight moderate limitations. Later that month, a physician's assistant opined that Plaintiff is limited to light work. Plaintiff continued to receive treatment in April 2013, where she complained of nausea, dizziness, and lightheadedness. She was diagnosed with benign paroxysmal positional vertigo; unspecified visual disturbance, headache, and hearing loss.

### The ALJ's Findings

At step one, the ALJ found that Plaintiff was not currently engaged in substantial gainful activity. At step two, the ALJ found that Plaintiff's depression and anxiety with a no-otherwise-specified personality disorder were severe impairments. At step three, the ALJ found that Plaintiff did not meet any listing and thus did not prove that her impairments alone render her disabled. At step four, the ALJ found that Plaintiff is incapable of performing her past relevant work. At step five, the ALJ found, based on residual functional capacity, age, education, and work experience, that Plaintiff could perform other work found in significant numbers in the national economy, including fish cleaner, laundry worker, and dining room attendant.

### Issues for Review

1. Whether Plaintiff is disabled under 20 C.F.R. Part 404, Subpart P, App'x 2, section 202.00, table No. 2?

2. Whether the ALJ improperly discredited Plaintiff's symptom claims?

3. Whether the ALJ failed to properly consider and weigh the medical opinion evidence?

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY . . . ^ 6

***Discussion***

1. *Whether Plaintiff is Disabled Under 20 C.F.R. Part 404, Subpart P, App'x 2, section 202.00, Table No. 2.*

For individuals of advanced age who cannot perform vocationally relevant past work with a history of unskilled work experience or skills that are not readily transferable to a significant range of semi-skilled or skilled work within a claimant's functional capacity, limitations in vocational adaptability represented by functional restriction to light work mandate a finding of disabled. 20 C.F.R. Part 404, subpart P, App'x 2, section 202.00(c).

Plaintiff was 55 years old at the time of the hearing, and she is a high school graduate. The vocational expert determined that Plaintiff had no skills that transfer to light work. Based on the vocational expert's testimony and a determination of Plaintiff's credibility, the ALJ determined Plaintiff is not limited to light work. The question thus becomes whether Plaintiff is actually limited to light work or less. This in turn revolves around the propriety of the ALJ's determinations on Plaintiff's symptom testimony, as a finding of light work depends on the crediting of that testimony.

As discussed below, the ALJ properly discredited Plaintiff's symptom testimony. Thus the ALJ used the correct findings from the vocational expert regarding Plaintiff's residual functional capacity. The decision to find that Plaintiff does not satisfy section 202.00(c) was correct, and substantially supported by the record.

2. *Whether the ALJ Improperly Discredited Plaintiff's Symptom Claims.*

ALJs must provide specific, clear, and convincing reasons to reject a Plaintiff's symptom testimony if there is no evidence of malingering and the Plaintiff has produced some objective medical evidence of the symptoms. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY . . . ^ 7

1281-84 (9th Cir. 1996). A lack of affirmative medical evidence substantially affirming the symptom testimony, standing alone, is an insufficient reason to reject symptom testimony. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The Commissioner offers two reasons as clearly compelling the ALJ's decision to discount Plaintiff's symptom testimony. First, the ALJ concluded that Plaintiff's decision to not seek treatment following the prescription of treatment regarding her alleged impairments negated Plaintiff's credibility. A failure to do so can allow an ALJ to discredit a plaintiff's symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7p.

There are legitimate reasons, however, for failing to obtain treatment, for example, a violation of one's religious beliefs, unusually risky surgery, duplicative treatments, etc. 20 C.F.R. § 404.1530(c). More broadly, the Administration considers "physical, mental, and linguistic limitations" when considering whether there is a "good" or "acceptable" reason for failing to obtain treatment. *Id.*

The record demonstrates that Plaintiff is capable of making decisions about the medication she takes. She engaged in a discussion with her OB/GYN about what types of hormones to take, for example, asking for a prescription DHEA but refusing estrogen. TR 513. At another visit, Plaintiff specifically told her treating professional that she did not want to discuss medication, and preferred homeopathy. TR 515. Plaintiff elected over-the-counter remedies, and did not purchase a muscle relaxant as prescribed. *Id.* At one point, Plaintiff indicates her symptoms are intermittent enough that she did not feel "prompted . . . to get medication." TR 521. A provider stated that Plaintiff has "not been very compliant with recommendations to date." TR 523.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY . . . ^ 8

A provider did mention that "[f]inances are part of the problem," as well. *Id.* When the record indicates that refusing treatment is based off of an inability to pay, the refusal to treat symptoms cannot be used to discredit a claimant's testimony. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999) (plaintiff who testified extensively on inability to pay bore burden). It is unclear from the record how big a problem finances were for Plaintiff's medication, or if the problem was recurring, as there is no other evidence or testimony on Plaintiff's finances. This stray comment is weighed against the substantial evidence of the record, which indicates that Plaintiff explicitly made choices over her desire to take specific medication. There is also no medical evidence indicating that Plaintiff's decisions on medication were related to her illnesses. In *Molina v. Astrue*, the Ninth Circuit upheld an ALJ's determination that a plaintiff's symptom testimony was incredible when there was no medical evidence that resistance to treatment was attributable to the mental impairment. 674 F.3d 1104, 1114 (9th Cir. 2012). Rather, Plaintiff's insistence on homeopathic remedies indicates that there was a personal preference involved.

When two reasonable, inconsistent interpretations are present and at issue, the Court must defer to the ALJ's decision. *Consolo v. Fed. Maritime Comm'n*, 388 U.S. 607, 620 (1966). The ALJ's decision to discredit Plaintiff's testimony on the basis that Plaintiff failed to seek treatment was based on clear, convincing evidence, and was permissible.

Second, the ALJ found that the objective medical evidence contradicted Plaintiff's testimony. Minimal objective findings cannot allow an ALJ to discredit a plaintiff's testimony standing alone; other reasons must be present. *Burch v. Barnhart*, 400 F.3d 676, 680-01 (9th Cir. 2005). As discussed above, though, another reason is present: Plaintiff's refusal to subscribe to treatment. Thus, objective findings can undermine self-serving testimony. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY . . . ^ 9

The ALJ was well within her rights to hold that "three separate evaluators found only that [Plaintiff] had a not-otherwise-specified personality disorder with only mild to moderate social functioning limitations." TR 21. This is sufficient objective medical evidence (indeed, the weight of the evidence) to support the ALJ's findings on Plaintiff's residual functional capacity. The ALJ also found that the weight of the evidence established that Plaintiff was "repeatedly found to be completely neurologically intact and unremarkable clinically." TR 21.

The ALJ also specifically described the testimony found discredited. The ALJ refers to Plaintiff's "self-reported history of head injuries and subsequent disequilibrium," and recent reports on an inability to walk more than a few blocks. TR 22. The ALJ properly considered Plaintiff's testimony, and discounted its credibility by substantial evidence.

3. *Whether the ALJ Failed to Properly Consider and Weigh the Medical Opinion Evidence.*

Here the parties contest the ALJ's findings and conclusions regarding Dr. Arnold's examination of Plaintiff. An examining physician's opinion can only be rejected for specific, legitimate reasons, supported by substantial evidence from the record. *Andrews v. Shalala*, 53 F.3d 1035, 1943 (9th Cir. 1995). An unreasonable examining opinion may be rejected in light of the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

The Court finds that the ALJ set out a detailed summary of the conflicting medical evidence, made an interpretation, and properly rejected Dr. Arnold's opinion. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ spends several pages detailing Plaintiff's medical record, opinions of prior treating and examining medical professionals, and Plaintiff's allegations. TR 18-21. After reviewing the record, the ALJ found that Dr. Arnold's opinion was contradicted by the weight of the record, which found no such limitations. The ALJ's decision was

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY . . . ^ 10

further buttressed by the conclusion that Dr. Arnold's opinion was based primarily on subjective complaints, where the record provides other reasons for discounting Plaintiff's testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ properly treated Dr. Arnold's opinion, and her conclusions are supported by substantial evidence.

Plaintiff is correct that it is improper to reject medical opinions for the reason that they were prepared for an application for state benefits. *Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1191-92 (E.D. Wash. 2009). It was error for the ALJ to discount Dr. Arnold's opinion for that reason. TR 20. However, because the ALJ offered other specific and legitimate reasons for rejecting Dr. Arnold's opinion, which were based on substantial evidence, this error was harmless, and does not affect the outcome of the matter. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

For the reasons above, the Court **grants** Defendant's motion for summary judgment, **denies** Plaintiff's motion for summary judgment, and **affirms** the ALJ.

### *Conclusion*

Accordingly**, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 21, is **GRANTED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and close the file.

**DATED** this 27th day of June, 2016.



Stanley A. Bastian
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY . . . ^ 11